Judge Mills
delivered the Opinion of the Court.
This is an appeal from a decree of the circuit court, dismissing a bill which, had been exhibited by the administrator of J. Thompson, deceased, against Matthew Campbell, in his lifetime.
The object of the bill is to redeem, and have restored to the administrator of Thompson, several slaves, which are alleged to have been mortgaged by the intestate, to secure the payment of sums of money borrowed by him of Campbell at usurious interest, but which are charged to be in the possession of Campbell, and claimed by him to be of right his property under a purchase from the intestate, Thompson.
We have not thought it necessary to give a detailed statement of the transaction between the parties, as the same is alleged to be, in their respective pleadings, nor shall we attempt, a particular discusion of the various scraps of testimony contained in the record, and which we have had occasion to consider in coming to the opinion we are about to pronounce. It is proper, however, to remark, that whilst it is alleged, on the part of the complainant, that the slaves were mortgaged by Thompson, in his lifetime to secure the repayment of money loaned to him by Campbell, at an exorbitant rate of usurious interest, it is denied by Campbell, on his part, that usurious interest was ever reserved or taken by him fortheloan of money to Thompson; and he alleges that for a full arid valuable cpnsideration paid, the slaves were purchased by him; though he admits that after he had made the purchase, arid received from Thompson an absolute bill of sale for the slaves, he agreed with Thompson to resell the slaves to him, provided the price should be paid against a named day, and that a writing to that effect was accordingly executed by him to Thompson; *121 blit he denies that the price was ever paid by Thompson, and insists that the slaves were not mortgaged, and that the complainant has no right to redeem them.
The main question is, whether the slaves were held under a mortgage, or a purchase, with an agreement to ro-soll.
Such' questions depend upon tlieir own peculiar circumstances, and their investigation cannot be much aided by authorities.
The evidence shews this a mortgage of slaves, to secure a usurious loan.
The circuit courts in such cases are competent to ascertain the amount of advances, and interest " thereon,— which may be-allowed tc the usurer ' ' where the complainant admits that it is due— and the hire of the slaves; settle the account, and render a decree, in favor of either party, for the balance.
*121 From this brief statement it will be perceived that the main matter in contest between the parties involves the question whether, or not, the slaves were in fact mortgaged by Thompson to Campbell, or whether they were absolutely purchased by Campbell, with a stipulation to resell them to Thompson upon terms agreed on by the parties.
Questions of this sort, though often involved in great perplexity, depend so much upon the particular circumstances of each case, that but little light is to be derived from adjudged cases, and any thing that might be said in the present case, could have but little influence on any question of the sort that may in future aris.e between other parties. We have therefore deemed it unnecessary to say more than express the opinion that we have formed upon the facts, as they appear to us from the evidence com tained in the record, without going into the evidence and presenting a view of all the circumstances which have produced that opinion.
We think that instead of proving a conditional sale of the slaves, as alleged by Campbell, the evidence, beyond a reasonable doubt, shews that the slaves were, in fact, mortgaged by Thompson, to secure tlie repayment of money which,- through his necessities, he was induced to borrow from Campbell, at a most exorbitant and oppressive usury. The court ought not therefore, to have dismissed the bill of the administrator.
With respect to the extent of the relief that should have been granted there is, from the obscurity in the proof as to the precise sum advanced by Campbell, more difficulty. Upon the return of the cause to the court below, however, that court will be competent to adopt means to ascertain that amount, as well as to take an account of the hire of .the slaves since they have been possessed by Campbell. In taking the account the complainant must *122 be charged with (lie amount of the sums advanced by Campbell to Thompson, together with the mon-evpait! bv Campbell to others for Thompson, and a reasonable compon sat'on for the negromen that were hired by Campbell to him: These sums and interest thereon (the complainant having in his biii admitted that Campbell should have legal interest) form the amount for which the complainant should be charged. Against these sums Campbell should be charged with ilie hire of the slaves since he obtained the posesssion of them, and the balance asitmay be found tobe, should be decreed to the person in whose favor it may turn out to be. If it be in favor of the complainant, the decree should be in his favor for the amount thereof, and for a restoration of the slaves; if the balance turns out tobe in fav- or of the defendant, it must be decreed to be paid to him, by the complainant, before the slaves are restored; and upon his failure to pay against a day to be named by the court, the slaves, or so many thereof as may be necessary, should be decreed to be sold to make payment.
Brown and Depew, for plaintiffs; Crittenden, for defendants.
The decree must be reversed with cost, the cause remanded to the court below, and such orders and decrees there made as may conform, to this opinion and the equity of the case.